UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ADKINS ) | CASE NO.  1:13CV2004 |
| ) | |
| Plaintiff ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
| ) | |
| ) | |
| Defendant ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Kimberly Adkins Disability Insurance Benefits (DIB).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in her May 11, 2012 decision in finding that Plaintiff was not disabled because she retained the ability to perform a limited range of unskilled light work that existed in significant numbers in the national economy (Tr. 13-31).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.     PROCEDURAL HISTORY**

Plaintiff, Kimberly Adkins, filed her application for DIB on August 30, 2010, alleging she became disabled on May 13, 2010 due to post-traumatic stress disorder (PTSD), anxiety, depression, optic neuritis, left arm with plates and screws, and bullet in back (Tr. 168-169, 200).  Plaintiff requested a hearing before an ALJ, and, on April 11, 2012, a hearing was held where Plaintiff

1

appeared with counsel and testified before an ALJ, along with Julia Arndt Russell, a vocational expert (Tr. 32-82).

On May 11, 2012, the ALJ issued her decision, finding Plaintiff not to be disabled (Tr. 13-31). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-5, 7-10). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

## II.     STATEMENT OF FACTS

Plaintiff was born on March 22, 1965, which made her forty-five years old on her alleged onset date (Tr. 118-169). Plaintiff has a high school education and past work experience as an assembler and spray painter (Tr. 38, 75).

## III.    SUMMARY OF MEDICAL EVIDENCE

Plaintiff was shot by her brother in 2007, and, after proceeding with surgery in 2008, she did well with less pain, and completed physical and occupational therapy (Tr. 260-292, 350-362, 363-364). She continued to work until 2010 (Tr. 180).

Although Plaintiff stated she was afraid to leave her house, she admitted to shopping by herself occasionally (Tr. 365). She was able to perform household tasks, including cleaning, cooking, and washing laundry (Tr. 366).

Plaintiff received no treatment for her alleged mental impairments, and there is no evidence that she sought assistance from an indigent care provider or was denied care for financial reasons. She underwent two psychological consultative examinations.

William Schonberg, Ph.D. examined Plaintiff on November 22, 2010 (Tr. 363). Dr. Schonberg observed that Plaintiff had clear speech; logical, coherent, goal-directed thought processes; and a depressed and anxious mood with congruent affect (Tr. 364). She reported sensitivity to loud noises (Tr. 365). Plaintiff was oriented and had average cognitive functioning (Tr. 365). She had sufficient judgment and common sense reasoning ability to live independently, make important decisions, manage funds, and seek appropriate services in the community as needed; and noted that she wanted to obtain mental health treatment, but could not afford it (Tr. 365-366). Dr. Schonberg opined that Plaintiff had marked limitations in her ability to understand, remember, and follow directions, though she was capable of comprehending and completing some simple, routine tasks at home and understanding most of the questions posed to her during the assessment (Tr. 366). Dr. Schonberg further opined that Plaintiff's mental ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks was "extremely impaired," based on her inability to make change from $10, subtract serial 7's, and remember any of three words after five minutes, having given up "readily" (Tr. 366). Dr. Schonberg also opined that Plaintiff's mental ability to relate to others and withstand the stress and pressures associated with day-to-day work activity was extremely impaired (Tr. 366-367).

Dennis Marikis, Ph.D. examined Plaintiff in April 2011 (Tr. 385). Plaintiff reported significant stress and anxiety concerning her brother (Tr. 385-389). Dr. Marikis diagnosed PTSD and depression, and opined that she had a moderate to marked impairment in activities of daily living; a moderate impairment in social functioning; a moderate to marked impairment in concentration, persistence, and pace; and a marked impairment in decompensation to work-related situations (Tr. 389).

Reviewing state agency physician Bruce Goldsmith, Ph.D. found that Plaintiff had, at most,

3

moderate mental limitations, and retained the ability to perform tasks in a routine, static, and predictable work setting that does not require strict production quotas, fast-paced performance, or traveling, especially to unfamiliar places (Tr. 109-111).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified at her hearing that, physically, she suffers from left arm pain, bladder problems, optic neuritis, and post-traumatic stress disorder (Tr. 40-42). She testified to having a metal. plate and several screws in her left arm that result in severe pain on a daily basis (Tr. 41). The pain was described as "stabbing," radiating from her neck down to her shoulder, and, ultimately, in her elbow (Tr. 49-50). She stated that she cannot lift more than a gallon of milk with her left arm, and cannot reach overhead (Tr. 50, 54). Plaintiff also testified to numbness in her hands (Tr. 53).

Plaintiff testified to having a problem with her bladder and eyes, due to her multiple sclerosis. She reported frequent bathroom breaks, occurring as often as three to four times an hour (Tr. 41, 71-72). Her vision is impaired by optic neuritis. She testified to only partial vision in her right eye (Tr. 42, 73-74).

Psychologically, Plaintiff stated that the shooting by her brother is the main issue preventing her from being able to work (Tr. 40, 66-67). She testified to fear, distrust, and the inability to leave her home since the incident (Tr. 40). Plaintiff stated that she has difficulty remembering things, understanding instructions, making decisions, and cannot concentrate or focus (Tr. 56). She testified to poor interaction, trouble sleeping, nightmares, and anxiety (Tr. 57).

With regard to her daily activities, Plaintiff stated that her husband takes care of most of the chores and shopping. She testified that, since the shooting, she no longer interacts with her family (Tr. 59).

Thereafter, the vocational expert (VE) testified that, based upon Plaintiff's age, education, and past work experience, the ALJ for her first hypothetical limited Plaintiff to light work, which is defined as the ability to lift and/or carry twenty pounds occasionally, and ten pounds frequently, and the ability to sit, stand, and/or walk for six hours in eight-hour workday, with no limitations on the ability push and/or pull within the weight limits for lifting and carrying.  The individual is limited to occasional climbing of ladders and scaffolds, and she can frequently balance and stoop, and occasionally crawl.  The individual should avoid concentrated exposure to hazards, including unprotected heights, and moving, mechanical parts.  The individual should avoid concentrated exposure to vibrations.

The individual is limited to simple, routine, repetitive tasks in a static and predictable work setting, with no strict production quotas or fast-paced performance.  Furthermore, the individual is not required to travel, especially to unfamiliar places.  The job does not require intense interpersonal contact with supervisors and co-workers, and minimal contact with the public.

The individual is limited to occasional overhead reaching on the left side.

The VE stated that such an individual could not work at her past work as an assembler, but would be able to perform work as a spray painter without strict production quotas.  She could also work as an office helper–105,000 jobs nationally, and 2,600 jobs in the State of Ohio.

With subsequent hypotheticals, by the ALJ, imposing further restrictions of lifting eight pounds with right hand and no appreciable weight with the left hand.  The VE said the individual could not perform any of the identified jobs (Tr. 75-80).

Thereafter, the vocational expert testified that any additional breaks outside of a fifteen-minute morning and afternoon break, and thirty-minute lunch break, would not be tolerated by an employer on a sustained basis (Tr. 81).

5

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS

Based on the ALJ's review of the evidence of record and hearing testimony, the ALJ concluded that, despite a history of a gunshot wound to the left shoulder, status-post surgery; multiple sclerosis; and PTSD, Plaintiff remained capable of performing simple, routine, and repetitive tasks in a static and predictable work setting that does not require strict production quotas or fast-paced performance, travel (especially to unfamiliar places), intense interpersonal contact with supervisors and co-workers,

7

and more than minimal contact with the general public (Tr. 20-21).  The ALJ concluded that Plaintiff could not return to her past relevant semi-skilled work, but, relying on the testimony of a vocational expert, found that Plaintiff could perform a significant number of jobs in the national economy, and, therefore, was not disabled under the Act (Tr. 25-26).

Plaintiff raises two issues:

A. Whether the Administrative Law Judge erred in determining that Plaintiff does not meet the requirements of Listing 12.06.

B. Whether the Administrative Law Judge erred in failing to provide appropriate weight to the opinions of examining physicians.

Substantial evidence supports the ALJ's finding that Plaintiff did not meet 12.06 of the Listings.  20 C.F.R. pt. 404, subpt. P., app. 1.  The Listings are a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background.  20 C.F.R. Section 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted).  To be found disabled, a claimant must show that all of the criteria for a listing have been met.  20 C.F.R. Section 404.1525(c)(3); *Zebley*, 493 U.S. at 530.  An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify."  *Id.*  It is always Plaintiff's burden to present evidence that an impairment or combination of impairments meets or equals a listed impairment by presenting medical findings equal in severity to <u>all</u> of the criteria for the one most similar listed impairment.  20 C.F.R. Section 404.1526; *Zebley*, 493 U.S. at 431.

Plaintiff alleges that her impairments meet Listing 12.06, pertaining to anxiety. Part B of this Listing requires that the claimant's impairment result in at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3)

marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.06(B). Part C of this Listing requires the claimant to show that her impairment results in either repeated episodes of decompensation, each of extended duration; a residual process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a history of one or more years' inability to function outside of a highly-supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Section 404, subpt. P, app. 1, Section 12.06©.

The ALJ concluded the evidence supported a finding that Plaintiff had, at most, moderate restriction of activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace; and no episodes of decompensation of extended duration during the relevant period (Tr. 19-20). The ALJ further explained that there was no evidence that the paragraph C criteria were present (Tr. 20).

The ALJ reviewed the following evidence:

Plaintiff was shot by her brother in 2007, and, after proceeding with surgery in 2008, she did well with less pain, and completed physical and occupational therapy (Tr. 22, 260-292, 350-362). Although Plaintiff stated she was afraid to leave her house, she admitted to shopping by herself occasionally (Tr. 23, 365). She was able to perform household tasks, including cleaning, cooking, and washing laundry (Tr. 23, 366).

Plaintiff received no treatment for her alleged mental impairments, and there is no evidence that she sought assistance from an indigent care provider, or was denied care for financial reasons (Tr. 24). Plaintiff worked for several years after she was shot (Tr. 24, 180). Also, the reviewing state agency physician, Dr. Goldsmith, found that Plaintiff had, at most, moderate mental limitations, and

9

retained the ability to perform tasks in a routine, static, and predictable work setting that did not require strict production quotas, fast-paced performance, or traveling, especially to unfamiliar places (Tr. 24, 109-111).

Based upon these facts, the undersigned finds substantial evidence supports the ALJ's conclusions that Plaintiff's impairments did not meet or equal any listed impairment.

Generally, the opinion of a source who has examined the claimant is entitled to greater weight than the opinion of a non-examining source. 20 C.F.R. Section 404.1527(c)(1). However, the ALJ may reject an opinion that is inconsistent with the record. 20 C.F.R. Section 404.1527(c)(4); *Gant v. Comm'r of Soc. Sec.*, 372 F.App'x 582, 585 (6th Cir. 2010). Non-examining state agency psychological consultants are highly qualified experts in the evaluation of the medical issues in disability claims under the Act, and their opinions are entitled to consideration under the same regulations used to assess other medical opinions. 20 C.F.R. Section 404.1527(e); Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A.). An ALJ may rely on a state agency psychologist's opinion when the opinion is consistent with the evidence of record. *Id.; Hoskins v. Comm'r of Soc. Sec.*, 106 F.App'x 412, 415 (6th Cir. 2004). ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

First, Plaintiff claims that the ALJ failed to mention the consultative reports of Drs. Schonberg and Marikis (Pl.'s Br. at 10-11). However, the ALJ discussed Dr. Schonberg's report and opinion, ultimately concluding that it was unpersuasive and appeared to be based primarily on Plaintiff's subjective complaints (Tr. 23-24). The ALJ also discussed Dr. Marikis' opinion, concluding that other substantial objective evidence did not support the opinion that Plaintiff had marked limitations in social functioning and concentration (Tr. 24). However, Plaintiff later admits that the ALJ did discuss these reports, but asserts that the ALJ erred by giving greater weight to the opinion of

10

reviewing state agency physician, Dr. Goldsmith (Pl.'s Br. at 12). The ALJ stated that these opinions were entitled to limited weight, because the overall evidence did not support the degree of limitation assessed by these doctors (Tr. 23-24). *See*, 20 C.F.R. Section 404.1527(c)(4). Although Plaintiff had some mental limitations resulting from her impairments, the objective evidence does not support findings of the extreme limitations assessed by the consultative examiners (Tr. 23-24). In addition, Plaintiff's credibility as to her mental impairments was diminished by her lack of mental health treatment (Tr. 22-25). A claimant's failure to seek medical treatment over an extended period of time is often a factor to be considered against the claimant's assertion of a disabling condition. *See, Strong v. Soc. Sec. Admin.*, 88 F.App'x 841, 846 (6th Cir. 2004). *See,* also, 20 C.F.R. Section 404.1529(c)(3)(iv-v). General assertions of inability to afford treatment are insufficient. *See, Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). In this case, the ALJ had sufficient evidence before her to fairly decide Plaintiff's claims. Furthermore, the record contained no evidence that Plaintiff sought assistance from an indigent care provider, or was denied care for financial reasons (Tr. 24).

The ALJ found some functional limitations. Hence, the ALJ, ultimately, limited Plaintiff to performing a limited range of simple, routine, repetitive work that accounted for all of her functional limitations (Tr. 20-21).

Because substantial evidence supports the ALJ's evaluation of the evidence, the Court affirms the ALJ's decision that Plaintiff was not disabled.

## **VIII.** **CONCLUSION**

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional

capacity (RFC) to perform a limited range of unskilled light work that consisted of jobs that existed in significant numbers in the national economy, and, therefore, was not disabled. Hence, she is not entitled to DIB.

Dated: April 24, 2014                         */s/George J. Limbert*
                                                                GEORGE J. LIMBERT
                                                                UNITED STATES MAGISTRATE JUDGE